UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2016 FEB -9  PM 4: 02

DEPUTY CLERK_____

| | | |
|---|---|---|
| LENKA JEAN WANZER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  4:15-CV-003-Y-BL |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lenka Jean Wanzer ("Wanzer") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I.   BACKGROUND

Wanzer claims that she became disabled on February 1, 2011, due to chronic fatigue syndrome, fibromyalgia headaches, a lumbar spine impairment, and degenerative disc disease. (Tr. 234). Wanzer filed an application for DIB on March 26, 2012. (Tr. 214). Wanzer's application was initially denied on May 16, 2012, and on reconsideration on September 5, 2012. (Tr. 106). Subsequently, Wanzer requested and received a hearing before Administrative Law Judge Jack Raines ("ALJ") on August 21, 2013. (Tr. 106). On September 24, 2013, the ALJ

issued an unfavorable decision finding that Wanzer was not disabled and was capable of performing her past relevant work. (Tr. 103-118).

The ALJ followed the sequential five-step analysis to arrive at this decision.[1] First, the ALJ determined that Wanzer had not engaged in substantial gainful activity since the date of her alleged onset of disability, February 1, 2011. (Tr. 108). Next, the ALJ determined that Wanzer suffered from the following severe impairments: fibromyalgia, depression, bipolar I disorder, obesity, degenerative disc disease of the lumbar and cervical spine, and diabetes mellitus. (Tr. 108). Third, the ALJ surmised that Wanzer's severe impairments did not equal the severity of the impairments in the listings.[2] (Tr. 108). Next, the ALJ determined that Wanzer had the residual functional capacity ("RFC") to perform sedentary work activity, meaning that she can frequently lift and carry less than 10 pounds and occasionally lift and carry 10 pounds. (Tr. 111). Also, the ALJ determined that Wanzer can sit for about six hours in an eight-hour workday and that she can walk or stand no more than two hours in an eight-hour workday. (Tr. 111). The ALJ found that Wanzer is capable of climbing ramps or stairs, balancing, kneeling, crouching, and stooping at will. (Tr. 111). But, the ALJ found that Wanzer should not work around hazardous machinery or at unprotected heights. (Tr. 111). The ALJ determined that Wanzer had no visual or communicative limitations and that she is able to understand, remember, and carry out detailed, but not complex, instructions and make judgments on detailed, but not complex, work related decisions. (Tr. 111). The ALJ opined that Wanzer is able to interact appropriately with supervisors, coworkers, and the public, and that she could respond appropriately to the usual work pressures and changes in work settings. (Tr. 111). Next, the ALJ concluded that Wanzer could return to her past relevant work as an accounting clerk. (Tr. 116). Alternatively, The ALJ

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

found Wanzer capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 117). Finally, the ALJ determined that Wanzer was not disabled within the meaning of the Social Security Act. (Tr. 118).

The Appeals Council denied review on November 14, 2014. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II.    LEGAL STANDARD

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446,

3

448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a

claimant's RFC. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the

most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1).

     This Court's review of the Commissioner's decision to deny disability benefits is limited

to an inquiry into whether substantial evidence supports the Commissioner's findings, and

whether the Commissioner applied the proper legal standards. *Waters v. Barnhart,* 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir. 2000)).

Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Masterson,* 309 F.3d at 272; *Watson v. Barnhart,* 288 F.3d 212, 215 (5th Cir. 2002). If

substantial evidence supports the Commissioner's findings, then the findings are conclusive and

the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales,*

402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel,* 209 F.3d 448, 452

(5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo,* or substitute its

judgment for the Commissioner's, even if the court believes that the evidence weighs against the

Commissioner's decision. *Masterson,* 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence

are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton,* 209 F.3d at 452).

### III.   ANALYSIS

     Wanzer raises four issues on appeal: (1) whether the ALJ properly weighed the medical

opinions of Wanzer's treating physicians,[3] (2) whether the ALJ erred in evaluating Wanzer's

---

[3] As part of this issue, Wanzer also posits that the ALJ failed to properly determine her RFC. The Court will address
the entire argument as one issue.

4

credibility, (3) whether the ALJ relied on faulty testimony from the Vocational Expert, and (4) whether the Appeals Council properly considered Wanzer's request for review. (Doc. 13, p. 5).

## A. The ALJ properly weighed the medical opinions, and, as such, properly arrived at Wanzer's RFC.

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination on the claimant), or non-examining sources (a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Greenspan*, 38 F.3d at 237; *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* The analysis should include: (1) the physician's length of treatment of the claimant,

(2) the nature and extent of the treatment relationship, (3) the support of the physician's opinion afforded by the medical evidence of record, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating physician, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

Even so, courts in the Northern District of Texas have held that "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527(c)] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added).[4] Furthermore, following *Newton*, the Fifth Circuit explicitly clarified that the holding in that case applied only to the limited situation where "the ALJ rejects the sole relevant treating or examining medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009). Consequently, when the record contains competing opinions among examining physicians, the ALJ is not required to analyze the criteria set forth in 20 C.F.R. § 404.1527(c)(2) before declining to give great weight to a treating physician's opinion. *Id.* at 467; *Lopez v. Astrue*, 854 F. Supp. 2d 415, 423 (N.D. Tex. 2012); *Nicaragua v. Colvin*, No. 3:12-CV-2109-G BN, 2013 WL 4647698, at *4 (N.D. Tex. Aug. 29, 2013). The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Also, the ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56.

---

[4] *See also Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008).

In this case, Wanzer argues that the ALJ wrongfully discounted the medical opinions of her treating rheumatologist, Dr. Ho Bing Patrick Oei, and her treating internist, Dr. Sandip Mehta. (Doc. 13, p. 21-24).   The Commissioner responds that the ALJ did not explicitly denounce the medical findings of Drs. Oei and Mehta, but rather their ultimate conclusions on the issue of whether Wanzer was able to work. (Doc. 14, p. 10).   Indeed, the ALJ afforded "little weight" to the impairment questionnaires and letters completed by Drs. Oei and Mehta that ultimately conclude that Wanzer is unable to work. (Tr. 114, 116). The ALJ concluded that Dr. Oei's opinion—that Wanzer could not work full time—was inconsistent with Wanzer's own testimony regarding her daily activities. (Tr. 114). Also, the ALJ afforded little weight to Dr. Mehta's opinion on the issue because Dr. Mehta, an internist, reached conclusions about Wanzer's mental health—a task which the ALJ noted that he is not "well qualified" for—and because his opinion is inconsistent with his treatment notes and Wanzer's testimony about her daily activities. (Tr. 116).

The ALJ, citing 20 C.F.R. § 404.1527(e), noted that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or even special significance." (Tr. 116). In fact, ALJ's do not err by failing to credit the ultimate conclusions of treating physicians finding that claimants are "totally disabled" or "unable to perform any job at this point." *Tucker v. Astrue*, 337 F. App'x 392, 396 (5th Cir. 2009) (unpublished). "[C]onclusory statements such as those made by [Drs. Oei and Mehta] are 'not medical opinions as described in paragraph (a)(2) of [20 C.F.R. § 404.1527], but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case . . . .'" *Id.* at 396-97. Therefore, the ALJ properly rejected the opinions of Drs. Oei and Mehta on the ultimate issue of Wanzer's disability.

Assuming, for the sake of argument, that the ALJ rejected more than just Dr. Oei's and Dr. Mehta's ultimate opinions on disability, he would then be required to assess the § 404.1527(c)(2) factors in his dismissal of the treating physicians' opinions. *Newton*, 209 F.3d at 456. After reviewing the ALJ's decision, the Court is satisfied that the ALJ did consider, without reciting, the requisite factors in his decision. *See Jeffcoat v. Astrue*, 2010 WL 1685825, at *3. Specifically, the ALJ, demonstrating his awareness of the lengthy treating relationship **(factor 1)**, noted that Wanzer sought treatment from Dr. Oei from at least August 2010 through March 21, 2013. (Tr. 114). The ALJ acknowledged his review of Dr. Mehta's multiple impairment questionnaire (Ex. 13F) which includes Wanzer's length of treatment, October 11, 2010, through July 30, 2012. (Tr. 116, 616). Next, the ALJ demonstrated his consideration for Wanzer's frequency of examination by Drs. Oei and Mehta. The ALJ specifically noted that Wanzer had visited Dr. Oei 16 times over a two year period. (Tr. 114). Additionally, Dr. Mehta's impairment questionnaire listed his "frequency of treatment" as every three months. (Tr. 116, 616).

Then, the ALJ acknowledged the nature and extent of the treatment relationships between Wanzer and Drs. Oei and Mehta **(factor 2)**, by noting that both doctors were Wanzer's treating physicians and detailing the findings of their examinations. (Tr. 112-116). Next, the ALJ commented on the lack of support for the treating physicians' opinions because they are inconsistent with Wanzer's statements about her daily functioning and their own medical observations **(factor 3)**. Specifically, the ALJ mentioned Dr. Oei's observation that Wanzer's treatments "have only offered her limited ability to function with her activities of daily living and she is unable to work." (Tr. 114). The ALJ commented that the record, including Wanzer's statements that she engages in cleaning, limited gardening, washing dishes, researching

8

genealogy, completing paper work, dusting, sweeping, vacuuming, driving, playing on the computer, and visiting with friends, is inconsistent with Dr. Oei's finding. Further, the ALJ opined that Dr. Mehta's finding that Wanzer is unable to work is inconsistent with his treatment notes, which do not show functional limitations consistent Dr. Mehta's proposed RFC. (Tr. 116). As discussed, the ALJ found that the letters and impairment questionnaires by Drs. Oei and Mehta were not consistent with the record as a whole **(factor 4)**. The ALJ commented that the limitations set forth by Drs. Oei and Mehta are not consistent with the Wanzer's treatment history or subjective reports of her daily functioning. (Tr. 114, 116). The ALJ did acknowledge that Drs. Oei and Mehta are specialists in their respective fields **(factor 5)**, but that Dr. Mehta, an internist, was not well-suited to levy an opinion on Wanzer's mental impairment. (Tr. 116).

A review of the ALJ's opinion in conjunction with the evidence on record reveals no error in affording little weight to the opinions of Wanzer's treating physicians. The ALJ thoroughly explained his reasons for affording less weight to the treating physicians' opinions. Further, the ALJ's findings and determinations are consistent with the evidence on record. Even so, the ALJ acknowledged reviewing the medical records of Dr. Stephen Hurlbut, another examining physician, whose findings contradicted the opinions of Drs. Oei and Mehta. *See Qualls*, 339 F. App'x at 467 (analysis of the § 404.1527(c)(2) factors is unnecessary when confronted with competing opinions from examining physicians). Dr. Hurlbut's examination on June 19, 2012, revealed normal motor functions including strength, bulk, and tone. (Tr. 397). Also, Dr. Hurlbut's exam showed that Wanzer's sensory perception and gait were normal, but that she did show the presence of an intention tremor. (Tr. 397).

Finally, Wanzer argues that the ALJ's RFC did not include a narrative of any specific facts to support the RFC determination and, as a result, is unsupported by substantial evidence.

Case 4:15-cv-00003-Y   Document 16   Filed 02/09/16   Page 10 of 19   PageID 1130

(Doc. 13, p. 24).[5] Plaintiff contends that the ALJ may not rely on his unsupported opinion as to the limitations presented by the claimant's medical conditions. (Doc. 13, p. 24). However, Wanzer's medical records firmly support the ALJ's decision in this case. The ALJ cites, in narrative form, the findings of each relevant medical opinion. (Tr. 111-116). In several instances, the ALJ finds Wanzer to be either more limited or more capable than the physicians indicate in their opinions. In any event, the ALJ explains his reasoning for the weight afforded to the medical opinions and does not, as the Plaintiff avers, rely on his own unsupported opinions.

Accordingly, the Court finds that the ALJ presented good cause for discounting the opinions of Drs. Oei and Mehta and properly applied the factors in 20 C.F.R. § 404.1527(c)(2). Moreover, Wanzer's RFC is supported by the medical evidence on record, which the ALJ sufficiently details in his decision. The ALJ assessed the findings of the relevant physicians and noted his agreement or disagreement with each. As such, the ALJ's RFC determination is supported by substantial evidence. *See Masterson*, 309 F.3d at 272.

**B. The ALJ properly assessed Wanzer's credibility.**

Next, Wanzer contends that the ALJ conducted a faulty credibility analysis in failing to supply the requisite details when determining that Wanzer's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible . . . ." (Tr. 114). When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458.

---

[5] Plaintiff contends that the Commissioner waived any argument on this point since she failed to address it in her brief. (Doc. 15, p. 2). However, the crux of the Commissioner's entire argument for this issue is that the ALJ's RFC is supported by the substantial evidence. (Doc. 14, p. 8-13).

When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state his reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to

11

observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For the objective part of the two-step analysis, the ALJ determined that Wanzer did indeed have fibromyalgia, depression, bipolar I disorder, obesity, degenerative disc disease of the lumbar and cervical spine, and diabetes mellitus. (Tr. 108). Then, the ALJ opined, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." (Tr. 114). Next, for the subjective part of the analysis, the ALJ is required to make a determination as to the extent and credibility of the claimant's symptoms. In Wanzer's case, the ALJ acknowledged his awareness of this required, two-step analysis and completed the necessary steps, albeit not in rigid form. (Tr. 111-114).

The ALJ's opinion contains evidence that he thoroughly addressed the seven factors, where applicable, enumerated in SSR 96-7p. The ALJ considered Wanzer's daily activities **(1)** and noted that she watches television, reads, does cross stitch, cleans, gardens, washes dishes, researches genealogy, completes paper work, dusts, sweeps, vacuums, drives, plays on the computer, and visits with friends. (Tr. 109-110). Next, the ALJ assessed the location, duration, frequency, and intensity of Wanzer's symptoms **(2)** by examining Wanzer's testimony and the medical observations of Drs. Oei, Mehta, Khan, Brophy, Adams, Hurlbut, Reddy, Hedge, and Rowley. (Tr. 112-115). The ALJ also evaluated any precipitating and aggravating factors **(3)** related to Wanzer's impairments, specifically noting Wanzer's lack of aggressive treatment for her condition. (Tr. 116). The ALJ, assessing Wanzer's medications **(4)**, documented that Wanzer

took Cymbalta for depression, Etodolac for pain, Lyrica and Trazoadone for fibromyalgia, and Prilosec for acid reflux. (Tr. 112). The ALJ also noted that Wanzer underwent lumbar epidural steroid injections for pain. (Tr. 112). The ALJ did not identify any treatment, other than medication, that Wanzer underwent for relief of her pain or other symptoms **(5)**. Also, the ALJ did not note whether Wanzer utilized other measures to relieve her pain or other symptoms **(6)**. Finally, the ALJ clearly expressed knowledge of other factors concerning Wanzer's functional limitations and restrictions due to pain or other symptoms **(7)**. This is evident in the ALJ's RFC assessment and findings. (Tr. 111-116).

Regardless of form, the Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Wanzer's case. *See Prince*, 418 F. Supp. 2d at 871; *see also* 20 C.F.R. § 416.929(c)(3). Accordingly, the Court finds no error in the ALJ's credibility determination.

### C. The ALJ presented a proper hypothetical to the Vocational Expert.

Next, Wanzer avers that the ALJ "failed to present a hypothetical question to the vocational expert that accurately described all mental restrictions found for Plaintiff." (Doc. 13, p. 26). Specifically, Wanzer argues that the ALJ failed to mention her moderate difficulties in concentration, persistence, or pace when posing the hypothetical to the vocational expert ("VE"). (Doc. 13, p. 26).

Hypothetical questions to a VE need only include the disabilities "supported by evidence and recognized by the ALJ." *Masterson*, 309 F.3d at 273. A hypothetical question posed to a VE is not defective and can be relied upon if: (1) the hypothetical reasonably incorporates "all disabilities of the claimant recognized by the ALJ," and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or

suggesting to the [VE] any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436; *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Glover v. Barnhart*, 81 F. App'x 513, 514-15 (5th Cir. 2003) ("Contrary to [claimant's] contentions, the hypothetical questions posed to the [VE] by the ALJ were not defective, as the questions reasonably incorporated all of the disabilities recognized by the ALJ. . . . Counsel was also given the opportunity to suggest to the VE additional disabilities, including [ones] not recognized by the ALJ's findings."). Both conditions must be met in order to avoid reversible error. *Bowling*, 36 F.3d at 436. Thus, "[o]nly where the testimony by the VE is based on a correct account of a claimant's qualifications and restrictions, may the ALJ properly rely on the VE's testimony and conclusion." *Guillen v. Astrue*, 584 F. Supp. 2d 930, 940 (W.D. Tex. 2008). The assumptions made by the VE must be adequately supported by the evidence in the record. *Bowling*, 36 F.3d at 436; *Guillen*, 584 F. Supp. 2d at 940.

As stated, Wanzer alleges that the ALJ erred by failing to mention her moderate difficulties in concentration, persistence, or pace in the hypothetical posed to the VE.[6] But, as the Commissioner points out, the ALJ was not required to specifically include that terminology in his hypothetical because it is routinely expressed as the claimant's ability to understand and carry out instructions or interact appropriately with others. (Doc. 14, p. 16-17). The Commissioner contends that "[c]ourts in this district have held that the ALJ is not required to explicitly include the claimant's functional limitations found in paragraph B[7] in his hypothetical . . . as long as these limitations are adequately incorporated into the RFC, and the hypothetical 'tracks' the

---

[6] Much of Wanzer's support for this issue cites non-binding authority from several other circuits.
[7] The functional limitations found in paragraph B are "not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374187, at *4.

RFC." (Doc. 14, p. 17) (citing *Barr v. Astrue*, No. 3:11-CV-1349-BF, 2012 WL 2358307, at *6 (N.D. Tex. June 21, 2012)).

In this case, the ALJ found Wanzer capable of understanding, remembering, and carrying out detailed, but not complex, instructions and making judgments on detailed, but not complex, work related decisions. (Tr. 111). Also, the ALJ opined that Wanzer could interact appropriately with supervisors, coworkers, and the public, and that she could respond appropriately to the usual work pressures and changes in work settings. (Tr. 111). In *Westover v. Astrue*, the court found that substantial evidence supported the ALJ's RFC assessment allowing the claimant to perform work that involved detailed instruction, despite his moderate functional limitations in concentration, persistence, or pace. No. 4:11-CV-816-Y, 2012 WL 6553102, at *9-10 (N.D. Tex. Nov. 16, 2012), *adopted in*, 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012). Also, in *Holmes v. Astrue*, the court opined that the ALJ's finding that the claimant was moderately limited in maintaining concentration, persistence, and pace was not inconsistent with his ability to carry out detailed, but not complex instructions. No. 3:11-CV-2634-G BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013), *adopted in*, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013).[8] Finally, in *Herring v. Astrue*, the court held that the ALJ did not commit reversible error when, after considering the claimant's moderate limitations in social functioning, he found that the claimant could respond appropriately to supervisors, coworkers, and work pressures in a routine work environment. 788 F. Supp. 2d 513, 519-20 (N.D. Tex. 2011).

The Court finds that substantial evidence supports the ALJ's RFC assessment because he evaluated the entire record and sufficiently incorporated Wanzer's functional and social limitations into the RFC. *See Westover*, 2012 WL 6553102, at *9-10; *Herring*, 788 F. Supp. 2d at

---

[8] *See also Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010), *adopted in*, 2010 WL 3658996 (N.D. Tex. Sept. 17, 2010); *Berry v. Astrue*, No. 3:11-CV-02817-L BH, 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in*, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013).

519-20. Consequently, the hypothetical posed to the VE in this case was appropriate. In any event, the Commissioner contends that the hypothetical posed to the VE was not necessary since the ALJ found that Wanzer could perform her past relevant work as an accounting clerk. (Doc. 14, p. 16). "When, as here, the Commissioner finds that a claimant can perform past relevant work, vocational testimony is not required." *Nicholson v. Massanari*, 254 F.3d 1082 (5th Cir. 2001); *Wells-Defleice v. Colvin*, No. 3:13-CV-1279-BH, 2014 WL 1670102 n.11 (N.D. Tex. Apr. 25, 2014). So, even though the hypothetical in Wanzer's case was appropriate, it was not necessary since the sequential evaluation process ended at step four. *See Nicholson* at 1082.

### D. The Appeals Council did not improperly deny review in Wanzer's case.

Wanzer alleges that the Appeals Council erroneously failed to consider new evidence submitted by Dr. Lige Rushing, an examining rheumatologist, because the evidence was determined to be irrelevant to the time period before the ALJ's decision. (Doc. 13, p. 28). Specifically, Wanzer argues that Dr. Rushing's diagnoses, medical findings, and limitations were relevant to 2009 and beyond and, thus, should have been considered by the Appeals Council. (Doc. 13, p. 28).

"New evidence may be grounds for remand if it is material." *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003). "Evidence is 'material' if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination." *Moore v. Astrue*, No. 3-07-CV-2017B, 2009 WL 5386134, at *3 (N.D. Tex. Nov. 13, 2009), *adopted by*, 2010 WL 165992 (N.D. Tex. Jan. 13, 2010). "If new evidence is presented while the case is pending review by the Appeals Council, a court will review the record as a whole, including the additional evidence, to determine whether the Commissioner's findings are still supported by substantial evidence."

*Moore*, 2009 WL 5386134, at *3 (citing *Higginbotham v. Barnhart,* 163 F. App'x 279, 281-82,

2006 WL 166284 at *2 (5th Cir. 2006)).

Wanzer writes, "The evidence from Dr. Rushing . . . creates the reasonable probability of

changing the ALJ's decision as the findings are consistent with those from the treating doctors."

(Doc. 13, p. 29). The Court disagrees; the letter from Dr. Rushing, dated January 16, 2014, is

new evidence, but it is immaterial. *See Moore*, 2009 WL 5386134, at *3. First, the letter contains

Dr. Rushing's conclusory opinions related to the ultimate issue of disability. (Tr. 8-15). Dr.

Rushing writes, "The claimant is simply nonfunctional in a work setting due to her pain and

fatigue. . . . she cannot function at all in an 8 hour workday . . . . claimant is diagnosed with

bipolar disorder with psychotic behavior which in and of itself precludes her from working in a 5

day a week, 8 hour day environment." (Tr. 13-15). Conclusory statements such as these are "not

medical opinions as described in paragraph (a)(2) of [20 C.F.R. § 404.1527], but are, instead,

opinions on issues reserved to the Commissioner because they are administrative findings that

are dispositive of a case . . . ." *Tucker*, 337 F. App'x at 396-97.

Next, Dr. Rushing's examination took place after the ALJ's decision. (Tr. 8). Even

though Dr. Rushing concludes that it is his "best medical opinion the earliest date that the

description of symptoms and limitations in the questionnaire applies is 2009 . . . based on the

medical records," his opinion remains "immaterial" because it is merely cumulative of evidence

already considered by the ALJ. *See Moore*, 2009 WL 5386134, at *3. Essentially, Dr. Rushing's

letter adds a diagnosis of seronegative rheumatoid arthritis. (Tr. 11). But, the ALJ already

considered medical evidence pertaining to rheumatoid arthritis. The ALJ noted that Drs. Oei and

Mehta did not concur on whether Wanzer had rheumatoid arthritis and, thus, the ALJ did not list

it as a medically determinable impairment. (Tr. 108). Hence, despite Dr. Rushing's contention

that Wanzer now has rheumatoid arthritis, "remand is not appropriate 'solely for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition.'" *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 238 (5th Cir. 2015) (quoting *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985)).

The Court has reviewed the record as a whole, including Dr. Rushing's records, and determined that the Commissioner's decision is still supported by substantial evidence. *See Higginbotham,* 163 F. App'x at 281-82; *see also Jones v. Astrue*, 228 F. App'x 403, 407 (5th Cir. 2007).

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain

error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February 9, 2016.


E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**